# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

KAREN L. KOWALSKI,

        Plaintiff,

    v.

KILOLO KIJAKAZI,[1]

        Defendant.

CIVIL ACTION NO. 3:20-CV-01783

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Karen L. Kowalski ("Kowalski") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On December 12, 2017, Kowalski protectively filed an application for Title II disability insurance benefits, claiming disability beginning June 25, 2016, due to neck, back and

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

shoulder injury, degenerative disc disease cervical, right bundle branch block, generalized anxiety disorder, depression, and hypertension. (Doc. 14-5, at 2; Doc. 14-6, at 8). The Social Security Administration initially denied the application on January 24, 2018, prompting Kowalski's request for a hearing, which Administrative Law Judge ("ALJ") Paula Garrety held on March 27, 2019. (Doc. 14-2, at 64). Following the March 2019 hearing, additional evidence was obtained and proffered to Kowalski, who then requested a supplemental hearing, which the ALJ held on August 13, 2019. (Doc. 14-2, at 83). In a written decision dated August 26, 2019, the ALJ determined that Kowalski is not disabled and therefore not entitled to benefits under Title II. (Doc. 14-2, at 9). On August 5, 2020, the Appeals Council denied Kowalski's request for review. (Doc. 14-2, at 2).

On September 29, 2020, Kowalski filed the instant action. (Doc. 1). The Commissioner responded on April 9, 2021, providing the requisite transcripts from Kowalski's disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Kowalski alleging one base for reversal or remand. (Doc. 19; Doc. 22).

II.    **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity in significant numbers in the

national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A.  ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now-familiar five-step analysis." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

### B.  JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r of Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Kowalski is disabled, but whether the Commissioner's determination that Kowalski is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In her written decision, the ALJ determined that Kowalski "has not been under a

- 4 -

disability, as defined in the Social Security Act, from June 25, 2016, through the date of this decision." (Doc. 14-2, at 23). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). At the onset, the ALJ found that Kowalski met the insured status requirements of the Social Security Act through December 31, 2021. (Doc. 14-2, at 15).

A.    STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)–(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Kowalski "has not engage in substantial gainful activity since June 25, 2016, the alleged onset date," and therefore proceeded to step two of the analysis (Doc. 14-2, at 15).

B.    STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination

of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Kowalski had the following severe impairments: generalized anxiety disorder and depressive disorder. (Doc. 14-2, at 15). Additionally, the ALJ found that Kowalski had the following non-severe impairments: degenerative disc disease, sprain/strain, status-post concussion, and hypertension. (Doc. 14-2, at 15-16).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines the claimant's impairment or impairments meet a listing, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). The ALJ considered listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (Doc. 14-2, at 17). Here, the ALJ determined that none of Kowalski's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 14-2, at 17).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the

ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, the ALJ found that while Kowalski's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Kowalski's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 14-2, at 19). Considering all evidence in the record, the ALJ determined that Kowalski had the RFC "to perform medium work as defined in 20 CFR 404.1567(c)," subject to the following non-exertional limitations:

> [Kowalski] is limited to unskilled work, which includes simple routine tasks, no assembly line production work, and few workplace changes.

(Doc. 14-2, at 19).

E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn the requirements of the work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers

throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that through the date last insured, Kowalski was unable to perform her past relevant work as a disability claims adjustor and a supervisory government service. (Doc. 14-2, at 22). Thus, the ALJ proceeded to step five of the sequential analysis.

F.    STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Kowalski's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Kowalski could have performed. (Doc. 14-2, at 22). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Kowalski could have performed the requirements of occupations, such as a dishwasher, a floor cleaner/waxer, and a linen room attendant, which are occupations with open positions ranging from 35,000 to 300,000 nationally. (Doc. 14-2, at 23). Accordingly, the ALJ determined that Kowalski was not disabled and denied her application for benefits. (Doc. 14-2, at 23).

IV.    DISCUSSION

Kowalski advances three main arguments on appeal. (Doc. 22, at 21-22). First, Kowalski argues that the ALJ erred in giving significant weight to the opinion of a non-

- 8 -

examining state agency physician, Carl Ritner, D.O. ("Dr. Ritner"), "who had almost none of the medical evidence when he reviewed the case" and erred in giving no weight to the opinion of Kowalski's treating physiatrist, Albert D. Janerich, M.D. ("Dr. Janerich"). (Doc. 22, at 22). Second, Kowalski avers that the ALJ erred in finding that none of Kowalski's physical impairments were severe and erred in failing to include those non-severe limitations in the RFC assessment. (Doc. 22, at 32). Lastly, Kowalski asserts that remand is required as the ALJ's decision is constitutionally defective under the Appointments Clause. (Doc. 22, at 41). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 28, at 1).

     A.    THE ALJ DID NOT ERR IN EVALUATING THE OPINIONS OF DR. RITNER AND DR. JANERICH.

Kowalski avers the ALJ erroneously evaluated the medical evidence of record because the only medical opinion that suggested no limitations was non-examining state agency medical consultant Dr. Ritner, who opined on January 24, 2018, that Kowalski had no physical limitations. (Doc. 34, at 13). Kowalski argues that Dr. Ritner's opinion cannot support an RFC determination where the opinion predates important medical evidence that contradicts that opinion. (Doc. 22, at 28). Further, Kowalski argues that the ALJ's evaluation of Dr. Janerich's opinion does not have supporting medical evidence. (Doc. 22, at 30). In response, the Commissioner asserts that Kowalski's argument regarding Dr. Ritner's opinion is "unpersuasive because the more recent notes fail to confirm limitations that Dr. Janerich suggested." (Doc. 28, at 31). The Commissioner argues that the ALJ appropriately found Dr. Janerich's opinion to be unpersuasive, it was inconsistent with the evidence of record. (Doc. 28, at 30).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to the opinions of Dr. Ritner and Dr. Janerich.

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were

improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there

are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

On January 24, 2018, Dr. Ritner examined Kowalski. (Doc. 14-3, at 3-6). Dr. Ritner opined that Kowalski did not have any severe physical impairments. (Doc. 14-3, at 5). In evaluating the opinion of Dr. Ritner, the ALJ determined its persuasiveness by considering both the consistency and supportability of the opinion. The ALJ found that the opinion of Dr. Ritner was "persuasive, as it is consistent with the medical evidence of record, as discussed above." (Doc. 14-2, at 16). The ALJ's RFC assessment limited Kowalski to medium exertion work "to afford [Kowalski] all possible benefit of the doubt regarding her functional limitations." (Doc. 14-2, at 16). Thus, the decision, which Kowalski decries on appeal, is actually a judgment by the ALJ which favored Kowalski by giving her the benefit of every

conceivable doubt when crafting her RFC. In this setting "when an ALJ is relying upon other evidence to conclude that the claimant can do less than a medical source opined, ..., courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence." *Rathbun v. Berryhill*, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), *report and recommendation adopted*, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018). While Dr. Ritner opined that Kowalski had no severe medical impairments, the ALJ extended every reasonable inference in favor of Kowalski's subjective complaints and limited her to a medium work RFC. (Doc. 14-2, at 19). That decision favored Kowalski and the decision of the ALJ to provide Kowalski with the benefit of the doubt on this score was not an error, much less a prejudicial error which would now compel a remand.

Kowalski also alleges that the ALJ erred in giving no weight to the opinion of her treating physiatrist, Dr. Janerich. (Doc. 22, at 22). Applying the regulations, the Court finds that the ALJ's analysis of Dr. Janerich's opinion is supported by substantial evidence. In a letter dated September 21, 2018, Dr. Janerich opined that Kowalski should "avoid activities involving the use of her upper extremities at or above shoulder height, the repetitive use of her upper extremities even below shoulder height, or lifting, carrying, pushing or pulling loads greater than 5 pounds with the left arm and 10 pounds with the right arm." (Doc. 14-11, at 4-8).

In evaluating Dr. Janerich's opinion, the ALJ determined its persuasiveness by considering both the supportability and consistency of the opinion. The ALJ found that this opinion of Dr. Janerich was "not persuasive, as it is unsupported by and inconsistent with the evidence of record[.]" (Doc. 14-2, at 16). Specifically, the ALJ found that Dr. Janerich's

opinion was contradicted by the opinion of Paul Horchos, D.O. ("Dr. Horchos"), which showed "cervical paraspinal structure tightness, but no problems with balance or visual capabilities, her bilateral upper extremity strength was good, upper extremity grip strength was intact, and a negative straight leg raise test, as well as diagnostic testing and testimony that [Kowalski] takes only over the counter pain medication." (Doc. 14-2, at 16).

Thus, the ALJ's evaluation of Dr. Ritner's and Dr. Janerich's medical opinions comported with the Social Security Regulations. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not required to explain additional factors. To the extent Kowalski asks the Court to re-weigh the record evidence or make new factual findings, the Court may not invade the ALJ's province as a finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion would have been reached, but whether substantial evidence supported the ALJ's decision." See *Daub v. Colvin*, No. 3:15-CV-1066, 2015 WL 8013037, at *9 (M.D. Pa Dec. 7, 2015). Accordingly, the undersigned concludes substantial evidence supports the ALJ's evaluation of Dr. Ritner's and Dr. Janerich's opinions.

B.  THE ALJ DID NOT ERR IN CONSIDERING KOWALSKI'S PHYSICAL IMPAIRMENTS.

Next, Kowalski contends that the ALJ erred by failing to find her physical impairments, including her cervical spine, thoracic spine, and shoulder issues, to be severe impairments. (Doc. 22, at 32). Specifically, Kowalski avers that the ALJ "mis-characterized some parts of the record to provide reasoning that there was no severe impairment." (Doc. 22, at 35). The Commissioner submits that "the ALJ 's decision was detailed enough to withstand judicial review." (Doc. 28, at 30).

At Step 2 of the sequential analysis, the ALJ determines whether a claimant has a

medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities." 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality' which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a de minimis screening device used to cast out meritless claims. *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Indeed, "[w]hen an ALJ finds that the claimant has at least one severe impairment, omission of another at step two may be harmless error as long as the impairment is considered regarding the RFC or would not affect the outcome of the case." *Crone v. Saul*, No. 4:18-CV-01507, 2019 WL 5589241, at *6 (M.D. Pa. Sept. 16, 2019) (citing *Torres v. Comm'r of Soc. Sec.*, No. 1:17-CV-00843, 2018 WL 1251630, at *5 (D. N.J. Mar. 12, 2018)); *see also Guzman v. Berryhill*, No. 17-1222, 2018 WL 746385, at *7 (M.D. Pa. Feb. 7, 2018) ("If the sequential evaluation process continues beyond step two, a finding of 'not severe' regarding a specific impairment at step two may be deemed harmless if the functional limitations associated with the impairment are accounted for in the RFC"); *see also Zenon v. Berryhill*, No. 17-377, 2017 WL 4310099, at *4 (M.D. Pa. Sept. 28, 2017) (same). The burden is on the claimant to show that an impairment qualifies as severe. *Bowen*, 482 U.S. at 146.

In this case, at step two, the ALJ considered all of Kowalski's alleged impairments, including her generalized anxiety disorder, depressive disorder, degenerative disc disease, sprain/strain of the ligaments of her cervical spine, status-post concussion, and hypertension. (Doc. 14-2, at 15-16). The ALJ reviewed Kowalski's treatment records, including those from

- 15 -

Dr. Ritner, Dr. Janerich, and Dr. Horchos, and noted that the records indicate and Kowalski testified that "she takes only over the counter pain medication for these impairments." (Doc. 14-2, at 16). After weighing Kowalski's symptom allegations against other evidence in the record, the ALJ concluded that, during the relevant period, Kowalski only had the following severe impairments: generalized anxiety disorder and depressive disorder. (Doc. 14-2, at 16). The ALJ found that Kowalski's allegations of degenerative disc disease, sprain/strain, status-post concussion, and hypertension were non-severe because "there is no indication that these impairments cause more than a minimal effect on [Kowalski]'s ability to perform basic work activities." (Doc. 14-2, at 15-16).

Kowalski avers that the ALJ erroneously found that she had no severe impairments and could do medium work "despite massive evidence to the contrary." (Doc. 34, at 6). Specifically, Kowalski argues that she was "entitled to do work that would not result in pain," and that taking over-the-counter medications and going to a chiropractor for treatment is "evidence of pain caused by daily living that was not at the exertional level of medium work." (Doc. 34, at 7-8). Contrary to Kowalski's assertions, the Court finds that the ALJ properly applied the law and regulations to arrive at a determination that is supported by substantial evidence. The ALJ considered all of Kowalski's medical records after her motor vehicle accident on April 22, 2017, assessing how her conditions and treatment changed over time. (Doc. 14-2, at 15-16). At no point in the record does Kowalski identify any medical evidence that the ALJ failed to consider concerning her degenerative disc disease, sprain/strain of the ligaments of her cervical spine, status-post concussion, and hypertension. Instead, Kowalski asserts that the ALJ mischaracterized the evidence of record. (Doc. 22, at 35). However, Kowalski neglects to provide any evidentiary support demonstrating the need for additional

functional limitations in the RFC concerning these conditions.

As discussed supra, in determining whether the claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (plaintiff's "subjective complaints must be substantiated by medical evidence."). Additionally, the ALJ should consider the claimant's daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Subjective complaints, then, must be given due consideration, but will be evaluated in the context of objective evidence. *See* 20 C.F.R. § 404.1529(a); *see also Chandler*, 667 F.3d at 363 ("statements about your pain or other symptoms will not alone establish that you are disabled."). "To establish disability, there must be objective medical evidence from an acceptable medical source showing that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that leads to the conclusion that the claimant is disabled when considered with the other evidence of record." *Stancavage v. Saul*, 469 F. Supp. 3d 311, 337 (M.D. Pa. 2020). A claimant's allegations alone will not establish that he is disabled. 20 C.F.R. § 404.1529.

Applying this standard to the present record, the Court finds that substantial evidence supports the ALJ's physical RFC determination. Even assuming that the ALJ erred in finding her degenerative disc disease, sprain/strain, status-post concussion, and hypertension were non-severe impairments, any error is harmless. Read as a whole and in a commonsense

fashion, it is clear that the ALJ's decision considered these impairments throughout the sequential evaluation process and incorporated them into the RFC, restricting Kowalski to a limited range of medium work. (Doc. 14-2, at 15-20). For example, at step two, the ALJ specifically stated that Kowalski's medical records show that she had medically determinable impairments of degenerative dis disease, sprain/strain, is status-post concussion due to a motor vehicle accident, and hypertension. (Doc. 14-2, at 16). However, Kowalski's medical records did not indicate that these impairments caused more than a minimal effect on Kowalski's ability to perform basic work activities. (Doc. 14-2, at 16). Despite Dr. Ritner's opinion that Kowalski did not have any severe physical impairments, the ALJ limited her to medium exertion work to afford her "all possible benefit of the doubt regarding her function limitations." (Doc. 14-2, at 16). Moreover, the ALJ explained that Kowalski's medical records did not establish that Dr. Janerich's September 21, 2019, letter was contradicted by Dr. Horchos's treatment records, diagnostic testing, and the fact that Kowalski only takes over-the-counter pain medication. (Doc. 14-2, at 16). Given such evidence, the ALJ concluded that Kowalski's impairments of degenerative disc disease, sprain/strain, status-post concussion, and hypertension were non-severe. (Doc. 14-2, at 16).

In addition, the ALJ proceeded to consider these non-severe impairments throughout the sequential evaluation process and incorporated them into the RFC of medium work, which placed limited exertional demands upon Kowalski. (Doc. 14-2, at 19-20). This continued consideration of Kowalski's non-severe impairments is fatal to her step-two argument, as it is well-settled that: "[E]ven if an ALJ erroneously determines at Step 2 that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five."

*Naomi Rodriguez v. Berryhill*, No. 1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019) (citing cases).

Thus, the ALJ did not err in finding Kowalski's allegations of degenerative disc disease, sprain/strain, and status-post concussion due to a motor vehicle accident as non-severe, and even if there was an error, it was harmless, as the ALJ continued through the sequential evaluation process and considered all of Kowalski's impairments when formulating the RFC.

C.    THE ALJ DECISION IS NOT CONSTITUTIONALLY DEFECTIVE.

Lastly, Kowalski argues that the Commissioner serves a longer term than the President and is removable only for cause, which violated the separation of powers and rendered the ALJ's decision constitutionally defective. (Doc. 22, at 41). Specifically, Kowalski argues that her constitutional rights were violated because the ALJ and the Appeals Council exercised power that they did not lawfully possess due to the constitutionally defective delegation of power. (Doc. 22, at 42). In response, the Commissioner argues that any defect under the Appointments Clause of the Constitution, U.S. Const. Art. II. § 2, cl. 2, to the manner in which the ALJ was appointed was cured because the Acting Commissioner of Social Security ratified all ALJ appointments and approved them as his own under the Constitution. (Doc. 28, at 11-12). Further, the Commissioner argues that even if the ALJ had been appointed by a tenure-protected Commissioner, Kowalski failed to show that Section 902(a)(3)'s removal restriction caused the denial of her benefits claim. (Doc. 28, at 15).

Patterson relies on the recent Supreme Court decision in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). (Doc. 22, at 41). In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB

director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197. The following year, in *Collins v. Yellen*, the Court held a provision limiting the President to remove the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. 141 S. Ct. 1761, 1783 (2021) (holding that "Seila Law is all but dispositive").

Applying the holdings in Seila Law and Collins here makes it clear that the provision for removal of the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), violates the separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 42 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates the separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

Here, Kowalski argues that he was deprived of a valid administrative adjudicatory proves because, under 42 U.S.C. § 405(b)(1), only the Commissioner of Social Security can make findings of fact and issue final decisions as to benefits eligibility. (Doc. 22, at 42). Specifically, Kowalski argues that:

> The ALJ's delegation of authority to hear and decide [Kowalski's] claim came from Commissioner Saul and is therefore constitutionally defective. Similarly, the ALJ decided this case under regulations promulgated by Mr. Saul when he had no constitutional authority to issue those rules. Accordingly, a presumptively improper legal standard was utilized to adjudicate this disability claim at the administrative level.

(Doc. 22, at 42) (citations omitted).

In response, the Commissioner argues that Kowalski's separation of powers argument fails because Kowalski cannot establish any nexus between the removal restriction and the appointment of the ALJ who denied Kowalski's claim. (Doc. 28, at 11-12). The Commissioner avers that Commissioner Berryhill "was removable at will, refuting any suggestion of a nexus between Section 902(a)(3)'s tenure protection for a confirmed Commissioner and the ALJ's appointment." (Doc. 28, at 14).

First, the removal provision does not render the Commissioner's appointment invalid and thus, does not automatically void the ALJ's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void."). The ALJ who denied Kowalski's disability claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. (Doc. 28, at 14). Rather, the ALJ was appointed by an Acting Commissioner of Social Security whom the President could remove at any time. (Doc. 28, at 15). Because an Acting Commissioner does not have the same removal restriction as the Commissioner and because the ALJ was properly appointed, Kowalski's argument is not persuasive in this case. *See Collins*, 141 S. Ct. at 1781 (because removal restrictions of the FHFA applied only to the Director, "any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" by actions of an Acting Director who enjoyed no such protections);

- 21 -

*see also Boger v. Kijakazi*, No. 1:20-CV-00331, 2021 WL 5023141, at *3 n.4 (W.D.N.C. Oct. 28, 2021) (finding that "Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because ALJ Howard was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.").[3]

Second, Kowalski has not demonstrated that the unconstitutionality of 42 U.S.C. § 903(a)(3) inflicted compensable harm. *See Boger*, 2021 WL 5023141, at *3 (finding that the ALJ's decision was not constitutionally defective where "Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision[,]" but "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); *see also Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434, 2021 WL 4993944, at *9-10 (D. Or. Oct. 26, 2021) (concluding that "the authorities cited by Plaintiff in her supplemental briefing do not affect the disposition of this matter" where plaintiff "does not allege 'the SSA Commissioner took any action that is in any way related to the ALJ's decision' or the decision by the Appeals Council.").

In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict

---

[3] Other courts determining the issue of traceability for purposes of jurisdiction have disagreed with this position as it relates to the SSA. *See Dante v. Saul*, No. 20-CV-0702, 2021 WL 2936576, at *8 (D.N.M. July 13, 2021) (finding that "the plain language of § 902(a) suggests that the Presidential removal restrictions may apply not only to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an Acting Commissioner"), *but see Collins*, 141 S. Ct. at 1783 (noting that "we generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away' " when discussing whether an acting director is a confirmed director) (quoting *Shurtleff v. U.S.*, 189 U.S. 311, 316 (1903)).

compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788-89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Collins*, 141 S. Ct. at 1774. The Third Amendment was not subject to full judicial review and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *Collins*, 141 S. Ct. at 1785, 1789. Relief is available in removal challenges only where officials subject to the challenged removal restrictions cause the alleged injuries, and where those restrictions themselves caused "compensable harm" upon plaintiffs. *Collins*, 141 S. Ct. at 1789.

By contrast, in this case, the action challenged by Kowalski is the ALJ's decision denying benefits. Kowalski has alleged no direct action by former Commissioner Andrew Saul and no involvement—or even awareness—by the former President in the ALJ's decision. *Cf. Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Kowalski cannot show how the President's supposed inability to remove the Commissioner without cause might have affected any ALJ's disability benefits decision, much less the decision on her specific claim. As the Commissioner points out in the brief in opposition, holding Kowalski to a lower bar would

provide her an "unwarranted remedial windfall," in which many thousands of other disappointed claimants could receive the same relief. (Doc. 28, at 20). Further, Kowalski has made no clear allegation that Commissioner Saul's unconstitutional tenure resulted in compensable harm to her. The ALJ's decision was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner. There is no allegation suggesting a direct nexus between the adjudication of Kowalski's disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Kowalski's allegations merely express general dissatisfaction with the outcome of the adjudication of her Title II disability claim.

Lastly, as the Commissioner notes, several constitutional remedial doctrines support the denial of Kowalski's request for a rehearing. The harmless error doctrine dictates that retrospective relief is only appropriate where a statutory provision that violates the Constitution caused the plaintiff some harm. (Doc. 28, at 22-23). Here, because Kowalski cannot show that the Commissioner's tenure protection affected the ALJ's decision on her claim, her request for rehearing is denied. Next, "[t]he de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." *Ryder v. United States*, 515 U.S. 177, 180 (1995). Here, however, the Commissioner's appointment and the appointment of the presiding ALJ were entirely proper. To hold otherwise would risk unwinding untold thousands of disability determinations, endangering the efficient and orderly adjudication of benefits by the Social Security

Administration and harming the interests of those whose disability claims have yet to be adjudicated— precisely the type of "chaos" the de facto officer doctrine was designed to prevent. *Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring).

Lastly, the rule of necessity states that a judge must exercise adjudicatory responsibility over a matter, notwithstanding some defect in his or her title or authority, where all other judges share the same defect. *See Philadelphia v. Fox*, 64 Pa. 169, 185 (Pa. 1870). Here, it could not have been an error for the deciding ALJ to hear Kowalski's disability claim. If the Commissioner's tenure protection somehow filters down to affect one ALJ within the entire Social Security Administration, it affects all such ALJs. To hold that the assigned ALJ should have declined to adjudicate Kowalski's claim for that reason would have meant that all other ALJs must decline to adjudicate as well for the same reason. Such widespread action would have left Kowalski without a forum to adjudicate her claim and it would have denied her even the opportunity to qualify for benefits.

Accordingly, Kowalski has not alleged any connection between the unconstitutional limit on the Commissioner of Social Security's removal and the ALJ's decision denying Kowalski's benefits. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm.

V.   **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Kowalski's application

for disability benefits is **AFFIRMED**, final judgment is entered in favor of the Commissioner and against Kowalski, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


**Dated: February 22, 2022**                                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**